In the Matter of the Application of JOSEPHINE C. FIMIANI, Appellant, for an Order of Certiorari to the BOARD OF APPEALS OF THE CITY OF BUFFALO, Respondent.

STOVER PROPERTIES, INC., Intervenor, Respondent.

Fourth Department, November 11, 1931.

*Lewis & Carroll* [*William C. Carroll* of counsel], for the appellant.

*Charles L. Feldman, Corporation Counsel* [*Charles S. McDonough* of counsel], for the respondent Board of Appeals of the City of Buffalo.

*Gordon Steele,* for the respondent Stover Properties, Inc.

THOMPSON, J. The appellant is the owner of residential premises lying on the west side of Delaware avenue in the city of Buffalo, north of immediately adjoining premises owned by the intervenor, respondent, Stover Properties, Inc. The line of division between the two properties is not a continuous straight line but consists of two straight lines, the easterly of which is 93, and the westerly 146.26 feet in length. The two lines meet at an obtuse angle at a point 93 feet west from the street line. Respondent landowner proposes to erect an apartment house on its lot and the plans provide for a side yard, or yards, between the building and the lines of appellant's property about 6 feet wide along the 93 feet line, before spoken of, and about 40 feet wide along the 146.26 feet line, also above mentioned. It is conceded that chapter 70, section 6, subdivision a, of the Ordinances of the City of Buffalo known as the Zoning Ordinance, requires the " least dimension " of this particular side yard to be 19 feet, and that the average width of it is in excess of that figure.

The definition of the term " least dimension," as used in the ordinances, is found in chapter 70, section 32, subdivision 20, of such ordinances as follows: " The ' least dimension ' of a yard is

the least of the horizontal dimensions of such yard. If two opposite sides of a yard are not parallel, such least dimension shall be deemed to be the mean distance between them."

In determining whether or not the side yard proposed by the plans of the intervenor, respondent, comes within the requirements of these ordinances, it is necessary to arrive at the meaning of the provision just above set out. It is the contention of the respondents that the second sentence of the section justifies the side yard that it proposes, the two opposite sides of the yard not being parallel, and the mean distance between them being in excess of the nineteen feet required by the ordinances. We do not share this view. The object of the ordinances is to provide for a reasonable side yard between two residence properties. The construction urged by respondents defeats such purpose. Subject to lawful regulations, the location of the lines of a proposed building are entirely subject to the will of the one erecting it. Under respondents' theory, a person could so plot his building lines that a side yard might be of the very narrowest width at any given point, if other portions of it were of sufficient width to bring the average within the requirements of the ordinances.

The reading of the first sentence of subdivision 20 of section 32 of the ordinance shows conclusively that its framers never intended such a meaning to be attached to the ordinance, for in cases coming under that part of the ordinance the side yard would have to have a width at least equal to that required by the ordinance throughout its entire length. The intent and purpose of the ordinance, as appears in its first sentence, was to provide for a side yard between two residence properties which, as near as might be, should be of uniform width throughout the whole of it. The first sentence declares the policy of the ordinance. It was doubtless the design of the second sentence to include cases of such unusual conditions as not to be accurately covered by the first sentence. Both parts of the ordinance must be construed together and meaning given to each if possible. Neither should be construed so as to make the other meaningless or invalid. Void and empty construction must yield to those that are valid and meaningful. In the construction of statutes under circumstances like these, it is proper also that some consideration be given to the meaning of the term under examination in common use and to the ordinary mind. In such a consideration it can scarcely be claimed that the construction suggested by the respondents is generally urged or accepted.

We think, therefore, it was the intention of the framers of the ordinances that for the purposes of computing the distances and

determining whether or not a proposed side yard fulfills the ordinances, the side of a yard must be a continuous straight line, and that in the use of the phrase " if two opposite sides of a yard are not parallel," they had only in mind two opposite sides of a yard, each of which was a continuous straight line. We do not think that broken straight lines were intended to be considered as one line under this provision.

We, therefore, hold that under the ordinance the side yard in this case should be treated as having as many sides as there are continuous straight lines bounding it, each continuous straight line boundary thus forming a side, and that the least dimension between any two of the opposite sides must be not less than nineteen feet.

For these reasons the order of the Special Term should be reversed, with costs, the determination of the board of appeals and the director of buildings annulled, and the order of certiorari sustained with fifty dollars costs.

All concur, except CROSBY, J., who dissents and votes for affirmance. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

Order reversed on the law, with costs, order of certiorari sustained and determination of director of buildings annulled, with fifty dollars costs and disbursements.